# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

vs.   \*   Case No. **19-cr-00137-PWG-26**

Bobby Cannon

\*\*\*\*\*\*

## MEMORANDUM AND ORDER

Defendant seeks reconsideration of this Court's original detention decision. (ECF No. 523). The Government has filed an Opposition. (ECF No. 525). Defendant has filed a Reply. (ECF No. 526). The Court finds that no hearing is necessary. For the reasons set forth more fully below, Defendant's motion is **DENIED**.

Defendant is charged by indictment with drug conspiracy involving serious bodily injury and death, possession with intent to distribute greater than 40 grams of fentanyl, and use of a firearm in furtherance of a drug trafficking crime as a result of being an alleged member of the Gregory Butler Drug Trafficking Organization ("Butler DTO"). (ECF No 447). These charges stem from Defendant being found unconscious in his vehicle and having on his person a loaded 9 mm handgun with extended magazine containing 21 rounds of ammunition, 18 suboxone stripes, and more than $3000 in cash. (ECF No. 525 at 2-3). A search of his vehicle uncovered another 52 rounds of 9 mm ammunition, along with ammunition for a .45 caliber handgun and assault rifle and a black ski mask. *Id.* That search also turned up 1 bag containing 92.5 grams of suspected heroin and fentanyl, and another bag with 4.3 grams of the same. *Id.* Defendant attempted to flee the scene but was quickly apprehended. *Id.* When another member of the DTO was arrested, Defendant is alleged to have taken over the "drug phone" that the DTO had been using to coordinate some of its drug sales. *Id.* Notably, the indictment identifies several citizens who died as a direct result of drugs sold by other members of the Butler DTO, and several more who overdosed and were hospitalized. (ECF No. 447 at 5-9). There incidents are alleged to have been known to the DTO, but that did not discourage continued drug sales and planned sales, to include presumably the significant amount of suspected heroin and fentanyl found in Defendant's vehicle at the time of his arrest.

At the relatively young age of 23, Defendant already has two prior convictions. The first stemmed from a charge of attempted first-degree murder, resulting in Defendant's guilty plea to second degree assault. The second, a drug possession—not marijuana conviction occurred while Defendant was on probation. (ECF No. 525 at 8).

Defendant had a detention hearing before this Court on February 11, 2020, with the Court finding probable cause to support the charges, that Defendant had not rebutted the

statutory presumption of detention accompanying both his gun and drug charges, and that the Government had proven by clear and convincing evidence that Defendant was a danger to community safety and that no condition or combination of conditions could reasonably assure community safety. (ECF No. 477). Defendant did not appeal that decision at the time.

Defendant now seeks to reopen the issue of detention pursuant to 18 U.S.C. 3142(f)(2)(b) based on the COVID-19 pandemic as it affects his residence at the Correctional Treatment Facility ("CTF") in Washington, DC. That provision allows the Court to revisit a prior detention decision based on new information not previously available at the time of the original hearing that has a "material bearing on the issue of whether there are conditions of release that will reasonably assure…the safety of any other person and the community." *Id*. This Court has previously held that the unprecedented COVID-19 pandemic satisfies the threshold requirements of 3142(f)(2)(b) and dictates that this Court should include COVID-19 among the other factors determined by Congress as bearing on detention as found in 18 U.S.C. 3142(g). *United States v. Martin*, 19-PWG-140.

At the time of the original detention hearing on February 11, 2020, this Court relied upon several 3142(g) factors in reaching its detention decision. This Court noted the statutory presumption based on the drug and gun charges, the recommendation of Pretrial Services who would otherwise be tasked with supervising Defendant should he be released, the nature of the offense involving dangerous drugs for a DTO whose product was directly linked to several overdose deaths and hospitalizations, and the strength of the Government's proffer in that the loaded handgun, ammunition and drugs were found on Defendant's person and in his vehicle where he was the sole occupant. (ECF No. 477).

Defendant re-argues some of those factors, pointing out that he is not personally identified in the indictment as a person directly involved in the actual sales that led to the listed hospitalizations and deaths, and that his criminal record is not as significant as some. (ECF No. 523 at 2 n.1). Defendant also discussed some other cases where other defendants charged with serious offenses were released and not detained. *Id*. at 6-7.

These arguments do not alter the Court's previous analysis. Although no specific deaths have been traced to Defendant's past drug customers, and the impact on his intended future customers can never be known, there is no doubt that Defendant's product is a very dangerous one. Moreover, Defendant was found with a loaded gun and more than 70 rounds of ammunition for that gun. While there are other charged individuals who come before the Court with more significant criminal records, that hardly converts Defendant's past convictions to a virtue. Finally, this Court has made clear that its analysis is an individualized one such that comparison to other decisions for other individuals is not overly compelling.

The thrust of Defendant's argument is that the COVID-19 pandemic so outweighs all of the other factors as to support his release. (ECF No. 523 at 2-7). The Court disagrees. To be sure, COVID-19 is an acute threat to public health across the globe, and raises additional risks to those in custodial situations such as nursing homes, hospitals, and detention facilities where some of the recommendations of health officials are difficult to fully implement. But even in the community at large, the threat is significant and difficult to control. That is, removing Defendant from CTF does not reduce his risk to zero. While it is certainly likely that the risk of contracting

the virus is less outside of a custodial setting, how much less is a function of many factors including the availability of testing, compliance with social distancing both by a person and their regular contacts, the prevalence of virus in their particular community (which is not readily quantifiable), a person's individual health characteristics (both in terms of contracting the virus and one's virus response), and the availability of care.

Defendant is critical of the efforts of CTF to deal with the pandemic. The Government counters that CTF's response is significant and adequate. (ECF No. 525 at 10-15). And the Government notes that Defendant has not alleged that he has been exposed to the virus, that he has any underlying health conditions that make him more at risk for an adverse outcome should he contract the virus, or that he requires testing or treatment that has not been provided, let alone been subject to deliberate indifference so as to sustain a constitutional violation. *Id*. at 15-16. *See United Stated v. Gray*, 19 GJH 407.

The COVID-19 pandemic respects no borders or demographics. Testing is still lacking in almost all settings, undermining the ability to determine who carries the virus and has the ability to spread it. Public decisions makers, assisted by the most knowledgeable experts in their fields, and armed with a full arsenal of public health weaponry nonetheless face ever increasing numbers of positive cases, mortality and morbidity. There is no vaccine and no known effective treatment other than supportive ICU care for those who grow sick enough to demand it, and a growing competition for those limited resources. To compound this, the historical barriers to resources and health care persist.

Thus, notwithstanding Defendant's arguments, the Court cannot conclude simply from the growing number of positive tests that the measures undertaken by CTF are inadequate. Unlike the skilled and dedicated advocates on both sides, or able litigants in other cases cited by the parties, the Court cannot pick and choose from among various information sources, virtually all of which have some measure of credibility yet can still be in conflict. Instead, the Court considers all of this and attempts to arrive at an objective assessment reflecting the most recent available information available to it.

Moreover, the Court has an added responsibility to the community at large by virtue of the Bail Reform Act to give full consideration to *all* the consequences of a defendant's release as it impacts community safety, not just COVID-19 impacts. The pace of shootings and homicides in Baltimore City has not abated with COVID-19, with 29 shootings (11 of them fatal) between March 23, 2020 and April 3, 2020. Fenton, "Baltimore crime during coronavirus: Property crime plummets, gun violence continues," *Baltimore Sun*, April 4, 2020. Drug overdoses, especially with the deadly emergence of fentanyl as in this case, continue.

After a full hearing, the Court concluded that the factors determined by Congress to be the most germane to a release or detention decision demonstrated by clear and convincing evidence that the Defendant's release posed too great a risk to community safety to allow his release, and that he had not rebutted the presumption for detention that Congress has imposed for certain crimes like his. COVID-19 is now an additional ubiquitous risk. To be sure, Defendant and his fellow detainees are also a community, and no less deserving of protection from that risk than those not charged with criminal offenses. There certainly can be a case where the

likelihood and magnitude of this risk to detained individuals outweigh the collective risks to all other members of the community and support a release from custody. But this is not that case.

Accordingly, Defendant's motion is **DENIED**.

| | |
|---|---|
| 4/10/2020 | /s/ |
| Date | J. Mark Coulson |
| | United States Magistrate Judge |