## ATTACHMENT A

## STIPULATION OF FACTS

The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.

The NFL Criminal Enterprise was an organization comprised of individuals with social and familial ties to the Edmondson Village neighborhood in southwest Baltimore, Maryland. The term "NFL" is an acronym that stands for Normandy, Franklin, and Loudon, which are three adjacent streets that run through the Edmondson Village. Members of the NFL Enterprise demonstrated and promoted their affiliation using social media, jewelry, tattoos, and other public displays. Members of the NFL Criminal Enterprise engaged in a pattern of criminal activity including acts involving murder, trafficking and smuggling, illegal firearms possession, bribery, witness intimidation, and witness retaliation.

The NFL Enterprise, including its leadership, membership, and associates, constituted an enterprise as defined in 18 U.S.C. §§ 1961(4) and 1959(b)(2), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce ("the Enterprise"). The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise. The purposes of the Enterprise include the following:

     a.    Enriching the leaders, members, and associates of the NFL Enterprise through the distribution of controlled substances and other criminal activities, and through the use of threats, intimidation, and violence, including, but not limited to, acts involving murder, brokered killings, and retaliation against witnesses;

     b.    Promoting and enhancing the reputation and scope of the NFL Enterprise and its members' and associates' activities;

     c.    Preserving and protecting the NFL Enterprise and its leaders by keeping its members and associates from cooperating with law enforcement through intimidation, violence, threats of violence, and public displays of aggression and firearms possession;

     d.    Providing financial support and information to members, including those members who were incarcerated for narcotics trafficking, acts of violence, or other offenses;

     e.    Providing assistance to other members and associates who committed crimes for and on behalf of the NFL Enterprise in order to hinder, obstruct, and prevent law enforcement officers from identifying, apprehending, and punishing the offender; and

11

      f.    Keeping victims and witnesses in fear of the NFL Enterprise and in fear of its leaders, members, and associates through acts of violence, threats of violence, and public displays of aggression.

Members of the NFL Enterprise distributed large quantities of heroin, cocaine base, and fentanyl to drug users and drug redistributors from Maryland, Virginia, West Virginia, and Pennsylvania. In furtherance of the enterprise, NFL members shared narcotics supplies and distributed narcotics together.

Beginning in October 2018, and continuing through April 2019, the Federal Bureau of Investigation ("FBI") intercepted phone communications of NFL members engaged in drug trafficking together. Interceptions revealed that these NFL members sold narcotics on a daily basis, often selling thousands of dollars in narcotics in a single day. For example, interceptions revealed that the NFL criminal enterprise frequently sold over 100 grams of heroin mixed with fentanyl on a daily basis. Drug customers believed they were purchasing heroin, but members of the NFL criminal enterprise often adulterated heroin with fentanyl or sold fentanyl without any heroin.

Members of the NFL Enterprise also intimidated, threatened, and publicly identified people who they believed cooperated with law enforcement. Members of the NFL Enterprise also carried out acts of violence against people they believed cooperated with law enforcement to retaliate and intimidate others from cooperating with the government.

Members of the NFL Enterprise also engaged in murder-for-hire and regularly carried firearms in furtherance of conspiracies to commit murder.

From at least 2016 through March 2020, the Defendant, **BOBBY CANNON**, was a member of the NFL Enterprise and participated in its illegal activities with other NFL Enterprise members. During this period, **CANNON** distributed large quantities of heroin, fentanyl, and cocaine with other members of the NFL Criminal Enterprise. Over the course of the conspiracy, **CANNON** and his co-conspirators distributed over 1 kilogram of heroin, more than 400 grams of fentanyl, and more than 280 grams of cocaine base.

In or about 2018 and continuing through June 16, 2018, the NFL Criminal Enterprise offered money for the murder of "W.E." because the enterprise believed that W.E. was a federal witness cooperating with law enforcement regarding the enterprise. On or about June 16, 2018, **CANNON** walked up to a porch of a house in the Edmondson Village where W.E. and his girlfriend, J.H. were sitting. **CANNON** then shot W.E. and J.H. multiple times, killing them. Following the murder of W.E. and J.H., **CANNON** was paid by the enterprise for murdering W.E. and J.H. **CANNON** agrees that the murder of W.E. and J.H. was in furtherance of the NFL Criminal Enterprise.

In late 2018, the NFL Criminal Enterprise recruited **CANNON** to murder "D.J." in exchange for money. Over the course of several weeks, **CANNON** planned to murder D.J. As part of this planning, **CANNON** learned that D.J. resided at a halfway house in East Baltimore. On January 4, 2019, **CANNON** borrowed a car from a female associate in Southwest Baltimore. **CANNON** later drove that vehicle to the vicinity of the halfway house and waited for D.J. After several hours, **CANNON** saw D.J. on street. **CANNON** got out of his vehicle and approached D.J.

**CANNON** then shot D.J. multiple times in the arm, back, neck, and buttocks. D.J. sustained life-threatening injuries but survived the shooting.

Following the shooting, **CANNON** abandoned the car he used and notified the female associate. The female associate then falsely reported to the Baltimore Police Department that her car was stolen. **CANNON** then notified the NFL Criminal Enterprise that he had attempted to murder D.J but failed to kill him. **CANNON** agrees that the attempted murder of D.J. was in furtherance of the NFL Criminal Enterprise.

In April 2019, the FBI arrested multiple members of the NFL Criminal Enterprise, but not **CANNON**. Following these arrests, **CANNON** was instructed on a recorded jail telephone to continue distributing narcotics for the NFL Criminal Enterprise. **CANNON** subsequently took over a drug phone the NFL Criminal Enterprise used so that **CANNON** could continue to sell narcotics to drug customers of the organization.

On December 28, 2019, Baltimore Police Department officers encountered **CANNON** while he was found unconscious in a parked van. During their interaction with **CANNON**, officers observed **CANNON** in possession of a firearm. An officer recovered the firearm from **CANNON's** jacket pocket. Officers then searched **CANNON**'s van and recovered over 98 grams of fentanyl. **CANNON** agrees that he possessed the fentanyl with the intent to distribute it.

DATED:

Matthew DellaBetta
Peter J. Martinez
Assistant United States Attorneys

DATED: 11/17/21

Bobby Cannon
Defendant

Eugene Gorokhov, Esq.
Ray D. McKenzie, Esq.

13